DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| WYSTAN D. BENJAMIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 2017-1 |
| | ) |
| GOVERNMENT OF THE VIRGIN ISLANDS; DEPARTMENT OF PUBLIC WORKS; DEPARTMENT OF PROPERTY AND PROCUREMENT; FEDERAL HIGHWAY ADMINISTRATION; COMMISIONER GUSTAV A. JAMES in his official and individual capacity, | ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**ATTORNEYS:**

**Karin A. Bentz**
St. Thomas, U.S.V.I.
    *For Henry McAlarney,*

**Claude Walker, AG**
**Sheena Conway, AAG**
Virgin Islands Department of Justice
St. Thomas, U.S.V.I.
    *For the Government of the Virgin Islands; Department of Public Works; Department of Property and Procurement; and Gustav A. James.*

<u>**ORDER**</u>

**GÓMEZ, J.**

Before the Court is the motion to dismiss filed by the Government of the Virgin Islands; Department of Public Works; Department of Property and Procurement; and Gustav A. James.

## I.   FACTUAL AND PROCEDURAL HISTORY

On August 4, 2006, the Federal Highway Administration (the "Highway Administration") and the Government of the Virgin Islands ("GVI") entered into a Stewardship Agreement. Under that agreement, the Highway Administration would "carry out a program to assist the USVI in the construction and improvement of a system of arterial and collector highways and necessary inter-island connectors." *See* ECF No. 13, Exh. 1 at 3. On June 23, 2015, the Highway Administration and the GVI executed the "Territorial Highway Program Implementation and Stewardship Agreement" (the "Stewardship Agreement"). *See id.* at 1. Under the Stewardship Agreement, federal funds were provided to cover the costs of eligible projects in the United States Virgin Islands.

On December 1, 2015, Wystan D. Benjamin ("Benjamin") entered into a contract for professional services with the Virgin Islands Department of Property and Procurement ("Property and Procurement") on behalf of the Virgin Islands Department of Public Works ("Public Works"). Pursuant to the contract, Benjamin was to serve as a "Federal-Aid Highway Program Manager/Director of Highway Engineering" ("Program Manager"). *See* ECF No. 13, Exh. 3 at 11.

The "position summary" of Benjamin's contract explained:

> The candidate shall serve as a consultant to the Commissioner of The Department of Public Works. He/she shall serve as an authoritative advisor to The Department of Public Works in the evaluation development and implementation of The Territorial Highway Improvement Program as related to the Federal-Aid Highway Program of the U.S. Virgin Islands. He/she shall be well versed in highway design and construction requirements.

*Id.* The contract further described the "principal duties and responsibilities" of the position as:

> Advises and assists in providing direction to The Department of Public Works in the overall management of The Territorial Highway Improvement Program; is responsible for the development, implementation and execution of policies and procedures for program management, including contract administration and engineering; maintains a close relationship with the Chief Engineer and Directors of various Divisions within The Department of Public Works; becomes personally acquainted with and provides technical guidance and instruction to project managers, highway designers and all personnel connected with The Department of Public Works Office of Highway Engineering.

*Id.*

Among the projects on which Benjamin worked while Program Manager was the Main Street Enhancement Project. Prior to Benjamin's hiring, Tip Top Construction ("Tip Top") had been awarded the contract for that project. Problems with Tip Top's work under the Main Street Enhancement Project became apparent to Benjamin shortly after he assumed his position.

On March 22, 2016, a meeting was held to determine whether Tip Top was in breach of their contract and, if so, whether or not to terminate Tip-Top's contract. In attendance, were the Commissioner of Property and Procurement, two other officials from Property and Procurement, the Governor's Chief of Staff, and the "Office of Highway Engineers," which included Benjamin, the Commissioner of Public Works, Gustav James ("James"), and three other individuals. See ECF No. 13 at ¶ 47. At the meeting, Benjamin, "and other members of the Office of Highway Engineers," opined that Tip Top's breach was not curable. *See id.* at ¶ 48. They further recommended terminating the contract because of Tip Top's "financial position, dishonesty, [and] refusal to be forthcoming about Tip Top['s] . . . subcontracting." *See id.* No final determination with respect to Tip Top's contract was made immediately following the meeting.

On May 17, 2016, Property and Procurement drafted a termination of contract letter. Benjamin sent a copy of the letter to the Highway Administration, as was required by "the Stewardship Agreement[] and the requirements of [Benjamin]'s position as the Federal-Aid Highway Project Manager/Director." See id. at ¶ 63. James did not sign that letter and declined to terminate Tip Top's contract.

On June 21, 2016, Public Works partially terminated Benjamin's service contract. On October 4, 2016, Benjamin's contract was terminated.

On January 5, 2017, Benjamin filed a complaint in this matter. On May 8, 2017, Benjamin filed an amended complaint. The amended complaint names as defendants the Government of the Virgin Islands, the Department of Public Works, the Department of Property and Procurement, and James, in his official and individual capacity (collectively, the "GVI"). Benjamin alleges four causes of action: (1) a First Amendment Retaliation Claim against James; (2) a 42 U.S.C. § 1983 claim against James asserting violations of the First Amendment; (3) a breach of contract claim against all defendants; and (4) a claim for breach of covenant of good faith and fair dealing against all defendants.

With respect to the First Amendment and § 1983 claims, Benjamin alleges that James terminated Benjamin's contract because (1) Benjamin made statements at the March 22, 2016, meeting concerning Tip Top's performance on the Main Street Project; and (2) Benjamin sent a draft of a letter terminating Tip Top's contract to the Highway Administration.

On June 29, 2017, the GVI moved to dismiss Benjamin's complaint for failure to state a claim.

**II. DISCUSSION**

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker,* 363 F.3d 229, 233 (3d Cir. 2004).

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).

The Supreme Court in *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007), set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " *Id.* (citing *Twombly,* 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 674, 679).

### III. ANALYSIS

#### A. First Amendment Claims

"To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege '(1) constitutionally protected

conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). "[I]n the public employment context," a court determines whether a government employee's speech is constitutionally protected by using a three-part test:

> (1) was the plaintiff speaking as a citizen rather than as a public employee discharging her employment duties; (2) did the plaintiff's statements address a matter of public concern as opposed to a personal interest; and (3) did the plaintiff's employer have "an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement the employee made."

*Montone v. City of Jersey City*, 709 F.3d 181, 192–93 (3d Cir. 2013) (alterations omitted) (quoting *Gorum v. Sessoms,* 561 F.3d 179, 185 (3d Cir.2009)). "The First Amendment's protection of an employee's right to speak on matters of public concern extends to independent contractors." *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006) (citing *Bd. of Comm'rs v. Umbehr,* 518 U.S. 668, 686 (1996)); *see also D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552 Fed. App'x 110, 114 (3d Cir. 2014) ("This test, 'adjusted to weigh the government's interests as

contractor rather than as employer,' applies to government contractors . . . ." (quoting *Bd. of Comm'rs,* 518 U.S. at 673)).

In its motion to dismiss, the GVI argues that Benjamin has failed to state a claim for First Amendment retaliation because he has not adequately pled that his speech was made as a citizen as opposed to a public employee.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). In determining whether particular statements were made pursuant to official duties, "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014). In other words, whether the speech at issue was one of "the responsibilities an employee undertook when he 'went to work and performed the tasks he was paid to perform.'" *Flora v. Cty. of Luzerne*, 776 F.3d 169, 178 (3d Cir. 2015) (quoting *Lane*, 134 S. Ct. at 2378-79).

The Supreme Court has declined "to articulate a comprehensive framework for defining the scope an employee's duties" but explained that "[t]he proper inquiry is a practical one." *Garcetti*, 547 U.S. at 424. The Third Circuit has "fleshed

out that framework in a series of decisions," and in *Bradley v. W. Chester Univ.*, 880 F.3d 643 (3d Cir. 2018), summarized it as follows:

> In *Foraker v. Chaffinch*, for example, we held that state troopers were speaking pursuant to their official duties when they expressed concerns about deficiencies at a firing range up their chain of command and with the State Auditor, since monitoring the range was "among the tasks [they] were paid to perform." In *Gorum v. Sessoms*, we held that a tenured university professor was speaking pursuant to his official duties when he served as a student's advisor at a disciplinary hearing and when he withdrew the university president's invitation to speak at a fraternity prayer breakfast, since "[i]t was through his position as a professor and department chair" that he was able to counsel the student, and since the professor chaired the fraternity's speakers committee. And in *De Ritis v. McGarrigle*, we held that a public defender was speaking pursuant to his official duties when he made in-court comments to the effect that his transfer to a different office unit was "punish[ment] for taking too many cases to trial," since he had "in-court obligations to build rapport with the Court," which could be accomplished through such off-the record "idle chatter," and since "the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee."
> On the other hand, in *Dougherty v. School District of Philadelphia*, we held that a school district employee was *not* speaking pursuant to his official duties—and was instead speaking as a citizen—when he disclosed alleged misconduct by the school superintendent to a local newspaper. And in *Flora v. County of Luzerne*, we held that a public defender sufficiently alleged that he was speaking as a citizen when he initiated a class action lawsuit on behalf of indigent criminal defendants and reported his county's noncompliance with a Pennsylvania Supreme Court order to the Special Master whose report had given rise to that order.

*Id.* at 651-52 (footnotes omitted).

Here, Benjamin alleges that he was terminated as the result of two sets of statements: (1) the draft termination letter Benjamin forwarded to the Highway Administration; and (2) Benjamin's statements at the March 22, 2016, meeting. Benjamin alleges that forwarding the draft termination letter to the Highway Administration was among the "requirements of [Benjamin]'s position as the Federal-Aid Highway Project Manager/Director." *See* ECF No. 13 at ¶ 63. Where, as here, an employee undertakes "'tasks he was paid to perform,'" *see Flora*, 776 F.3d at 178 (quoting *Lane*, 134 S. Ct. at 2378-79), he does so as a public employee, not a private citizen. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006) ("Hill's First Amendment claim must fail because, as Hill himself concedes, he reported Marino's conduct and harassing actions to the Borough Counsel 'pursuant to his official duties.'").

With respect to the March 22, 2016, statements, the Court finds the Third Circuit's opinion in *Bradley v. W. Chester Univ.* instructive. In that case, the plaintiff was hired as Director of Budget and Financial Planning at a university. *Bradley*, 880 F.3d at 647. In that position, the plaintiff "was responsible for . . . reviewing the university's budget creation process and

recommending improvements to it, as well as attending and participating in various administrative meetings." *Id.* The plaintiff's supervisor asked the plaintiff to present a budget at a university meeting. *Id.* at 648. The supervisor directed the plaintiff to present "a version of the budget that 'inflated expenses,'" which the plaintiff believed was unethical and possibly illegal. *Id.* Nevertheless, the plaintiff presented that version of the budget at the meeting. When questioned about that budget by a meeting participant, the plaintiff "proceeded to present an alternative budget, which, she believed, 'presents reality.'" *Id.* The plaintiff was subsequently fired. *Id.* at 649.

The Third Circuit held that the plaintiff was not speaking as a private citizen when she presented the alternative budget. *Id.* at 652. The plaintiff's job required her to "review and recommend, as requested, changes to the University's budget allocation processes" *Id.* (alterations omitted). The plaintiff attended the meeting "at the behest of . . . her direct supervisor, and the[re was] . . . no indication that the meeting was open to public." *Id.* When the plaintiff presented the alternate budget, she did so "directly in response to a question from one of the [meeting participants]." *Id.* In doing so, the plaintiff "spoke 'because that is part of what she was employed to do,' in a 'mode and manner that were possible only as an

ordinary corollary to her position.'" *Id.* at 652-53 (footnotes and alterations omitted).

Similarly, here, Benjamin was hired as a consultant to the Commissioner of Public Works. In that position, Benjamin's duties included providing advice and recommendations on matters involving contract administration. A meeting was held by Public Works and other GVI agencies to discuss how the GVI should respond to Tip-Top's breach of contract. Benjamin was asked for his opinion, and he provided it. In other words, Benjamin has pled that he "spoke because that is part of what [h]e was employed to do, in a mode and manner that w[as] possible only as an ordinary corollary to h[is] position." *Id.* at 652-53 (alterations, footnote, and internal quotation marks omitted). Accordingly, the Court holds that Benjamin has not adequately pled that he was speaking as a citizen at the March 22, 2016, meeting and will dismiss Benjamin's First Amendment claims.

### B. Territorial Claims

Because the Court has dismissed all of Benjamin's federal claims, it is within the Court's discretion whether to exercise supplemental jurisdiction over the remaining territorial law claims. *See* 28 U.S.C. 1367(c); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("it has consistently been recognized that pendent jurisdiction is a doctrine of

discretion, not of plaintiff's right"). The decision whether or not to exercise supplemental jurisdiction is based upon "a host of factors, . . . including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (citation omitted). A court should also consider "the values of judicial economy, convenience, fairness, and comity." *Id.* (citation omitted).

This case was filed January 5, 2017. It has been pending for a little over a year. Further, there is no indication in the record that any defendant was served until after Benjamin filed his amended complaint on May 8, 2017. The case has advanced only to the stage of motions to dismiss. With regard to discovery, the parties filed discovery memoranda on February 8, 2017, and only initial disclosures appear to have changed hands. Because the case has not progressed very far, the Court will decline to hear those territorial claims alone. *See*, *e.g.*, *City of Pittsburgh Comm'n on Human Rights v. Key Bank USA*, 163 Fed. Appx. 163, 166 (3d Cir. 2006) (explaining that in *Gibbs* "the Supreme Court noted . . . that when federal claims are dismissed at an early stage, the exercise of pendent jurisdiction should

be declined."). Accordingly, the Court will grant dismiss the remaining territorial claims.

The premises considered, it is hereby

**ORDERED** that the GVI's motion to dismiss docketed at ECF Number 37 is **GRANTED**; it is further

**ORDERED** that Benjamin's amended complaint is **DISMISSED**; and it is further

**ORDERED** that, no later than March 22, 2018, Benjamin may, to the extent he wishes to do so, amend his complaint to remedy the defects identified in this Order.

                                                            S\_____
                                                          **CURTIS V. GÓMEZ**
                                                          **District Judge**